A. M. CAMPAU REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70340.   Promulgated March 12, 1937.

*Lee I. Park, Esq.,* and *Kins Collins, C. P. A.,* for the petitioner.
*Chester A. Gwinn, Esq.,* and *Hugh Brewster, Esq.,* for the respondent.

OPINION.

ARUNDELL: This proceeding involves a deficiency in income tax in the amount of $3,120.49 for the year 1930. The only question involved is whether an amount of $5,208.35 was properly accrued on

the books of account of the petitioner and reported by it as income for the year 1930.

The facts were stipulated and, briefly stated, are as follows:

The petitioner is a Michigan corporation with its principal office at Detroit, Michigan.

During 1930 and for several years prior thereto the petitioner owned certain real estate in Detroit, Michigan. By an agreement dated September 1, 1925, the petitioner leased such real estate, consisting of a store, together with the basement space connected therewith, located at 2040 Park Avenue, to Janney-Bowman, Inc., a Michigan corporation, hereinafter referred to as the lessee, for a period of 10 years at a total rental of $120,000, payable in monthly installments as follows: $833.33 per month from November 1, 1925, to and including October 1, 1928; $1,041.67 per month from November 1, 1928, to and including October 1, 1930; and $1,083.33 per month on November 1, 1930, to and including October 1, 1935.

On or about August 10, 1928, the petitioner learned that a substantial portion of the lessee's assets had been distributed to its stockholders, and on the basis of such circumstances brought an action at law in the Circuit Court of Wayne County, Detroit, Michigan, against the lessee for anticipatory breach of the lease. On September 11, 1928, the lessee filed its answer, in form a mere demand for trial and designated in the court records as a "Plea of General Issue." On March 7, 1930, a decision adverse to the petitioner, with costs to the defendant lessee, was rendered by the court. On March 11, 1930, the petitioner filed a motion for new trial, but before any action was had thereon the petitioner filed on April 18, 1930, a discontinuance of the suit and on May 3, 1930, the court entered its final order of dismissal.

On March 3, 1930, prior to the termination of the above action the petitioner filed a suit in equity against the lessee and others in the Circuit Court of Wayne County, in chancery. It its complaint therein the petitioner, among other things, alleged that on April 1, 1928, the lessee had vacated the demised premises, sold its stock and fixtures, and assigned its remaining assets to a trustee for liquidation for the benefit of its stockholders; that prior to and on or about April 1, 1928, the lessee requested release from its lease upon payment of six-month rental which the petitioner refused to grant; that the trustee had during May and July 1928 made two distributions to stockholders; that no assets were retained available for the payment of rentals due the petitioner from the lessee; and that it had a claim of $89,924.99 against the lessee. On May 8, 1930, the lessee and other named defendants filed their answer wherein, among other things, it is alleged that the principal business of the

lessee was the sale of certain pianos at retail; that in March 1928 it was notified that its franchise as dealer of such pianos would be discontinued at the end of such month; that thereupon lessee sold all of its stock of goods and fixtures to the sole representative in Detroit of the manufacture of such pianos and was paid therefor in cash, using most of it to discharge its current obligations; that it vacated the leased premises; that, having discontinued the retail sale of pianos, the lessee had no other activities thereafter than the collection of balances due upon its so-called leases for the sale of pianos, which in the usual course of business would run for a period of about three years after March 31, 1928; that after the disposal of its physical properties it had no need for a large capital and therefore took appropriate corporate proceedings during March and April 1928 to reduce its authorized capital stock from $25,000 to $5,000 and to declare a dividend payable to its stockholders of all the surplus remaining after the reduction of its capital stock; that on August 10, 1928, the petitioner without warning or notice elected to terminate the lease and thereupon filed an action at law against the lessee; and that by reason of such termination the lessee was thereupon relieved of making any further payments of rentals under the lease.

On April 9, 1930, the petitioner filed a second action at law against the lessee in the Circuit Court of Wayne County, and the lessee filed its answer thereto on or about April 30, 1930.

The suit in equity and the second action at law were compromised in September 1931 by the payment of the amount of $18,812.33 by the lessee to the petitioner and the release by the petitioner of the lessee of all further liability with respect to the lease involved. The amount of $18,812.33 so received in settlement was included as taxable income in petitioner's income tax return for 1931.

The rentals under the lease were paid up to and including August 31, 1928. No rental was paid for any period subsequent to August 1928 other than rentals, if any, included in the settlement payment of $18,812.33. However, the petitioner accrued on its books and reported as taxable income in 1928, 1929, and 1930, respectively, rentals for the period of September 1, 1928 to May 31, 1930, as follows:

| | |
|---|---|
| Sept. 1 to Dec. 31, 1928 | $2,916.67 |
| Calendar year 1929 | 12,500.04 |
| Calendar year 1930 | 5,208.35 |

Each of the above amounts represents the aggregate of the monthly rentals as provided in the lease less the actual rentals petitioner was able to obtain for the premises from other sources. The amount of $5,208.35 is reflected in the taxable net income shown in the deficiency notice herein.

690

No rentals under the lease involved here were accrued by the petitioner on its books subsequent to May 1930. Prior to the closing of its books for the calendar year 1930 the petitioner's executive vice president instructed its accountant, who periodically audited its books and prepared its return for that year, to charge off as a bad debt the rentals accrued for the period from September 1, 1928, to May 31, 1930. Such charge-off was made on the accountant's working papers pertaining to petitioner's affairs, but no entry reflecting such charge-off was ever actually made on the petitioner's regular books of account. The respondent, among other adjustments made by him, disallowed a deduction in the amount of $19,855.96 representing the account of Janney-Bowman, Inc., as a bad debt or loss, if any, on the ground that it was not definitely determinable in 1930.

While there is no stipulation as to the method employed by the petitioner in keeping its books of account, the proceeding has been presented on the assumption that such books were kept on an accrual basis and on brief the respondent states:

It will not be questioned that petitioner kept its accounts and rendered its return for the taxable year on the accrual basis. And it must be assumed that that method reflected the true income of this taxpayer.

The respondent, however, contends that the rentals in the amount of $5,208.35 were properly accrued on petitioner's books of account and reported as income in 1930.

It has been held that an "accrual of income takes place when all events have occurred which fix the amount of income and determine that it is to be received by the taxpayer." *Leo M. Klein*, 20 B. T. A. 1057, 1060. It has also been held that a "taxpayer on the accrual basis can not be charged with income if there exists good reason for believing that the income can not be collected", *American Fork & Hoe Co.*, 33 B. T. A. 1139, 1149, and that "to accrue payment which probably never will be received would distort income." *Emanuel Solomon Ullmann*, 30 B. T. A. 764, 768; affd., in *Commissioner* v. *Ullmann*, 77 Fed. (2d) 827; certiorari denied, 296 U. S. 631. In *Commissioner* v. *R. J. Darnell, Inc.*, 60 Fed. (2d) 82, the court stated:

* * * if income has neither actually been received during the taxable year, nor the right to its receipt been definitely fixed during the year, as to both the existence of an obligation on the part of the payor and the amount to be paid, such income is properly to be allocated only to that year in which it was in fact received or in which the right to receipt became fixed and liquidated.

It appears from the answer of the lessee filed May 8, 1930, that it considered itself relieved from the payment of rentals after August 1928 under the lease on the ground that the petitioner had terminated the lease; that it, the lessee, during March and April 1928, had disposed of its physical properties, consisting of all of its stock in trade

and fixtures, by sale thereof; that most of the cash received therefor had been expended; that it had decreased its capital stock from $25,000 to $5,000 and declared a dividend of all the surplus remaining; that it discontinued business and thereafter engaged in no activities except the collection of some balances due upon so-called leases for the sale of pianos. From such allegations it appears that the lessee questioned the right of the petitioner to any further rental after August 1928 under the lease; that it would not, and did not, intend to pay any further rentals unless compelled to do so, and in fact pursued a course of action which practically made it impossible for it to pay the rentals provided for in the lease. Furthermore, in March 1930 a judgment against the petitioner and in favor of the lessee was rendered in the first action commenced by the petitioner in 1928. Although the petitioner had commenced another action, there was no certainty that the result therein would be more favorable to the petitioner than the result in the first action had been.

It was alleged in the answer of the lessee filed in the equity suit that the petitioner in connection with its first action at law against the lessee garnisheed not only the "assets" of the lessee but also the "assets" of the individual stockholders so far as they represented dividends paid to them by the lessee. Assuming this allegation to be true, the garnishment of such assets did not constitute a constructive receipt of such assets by the petitioner. Such garnisheed assets were not subject to its disposition. Its right to such assets, or any part thereof, was contingent upon the determination of the court, and the court's determination was unfavorable to the petitioner. This action was dismissed in 1930 and presumably the garnisheed assets thereunder were also released. The petitioner at no time received, actually or constructively, earnings or income "under a claim of right and without restriction as to their disposition." *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. In that case, as in this proceeding, the right to receive certain income was in question. In that case the Supreme Court stated:

* * * The net profits were not taxable to the company as income of 1916. For the company was not required in 1916 to report as income an amount which it might never receive. [Citing cases.] There was no constructive receipt of the profits by the company in that year, because at no time during the year was there a right in the company to demand that the receiver pay over the money. Throughout 1916 it was uncertain who would be declared entitled to the profits. It was not until 1917, when the District Court entered a final decree vacating the receivership and dismissing the bill, that the company became entitled to receive the money. Nor is it material, for the purposes of this case, whether the company's return was filed on the cash receipts and disbursements basis, or on the accrual basis. In neither event was it taxable in 1916 on account of income which it had not yet received and which it might never receive.

The case of *Brooklyn Union Gas Co.*, 22 B. T. A. 507; affd., in *Commissioner* v. *Brooklyn Union Gas Co.*, 62 Fed. (2d) 505, cited by respondent, is distinguishable in that therein the taxpayer had the right to receive and could demand payment to it of the earnings there involved without restriction as to its disposition.

We, therefore, conclude that the item of $5,208.35 was not properly accruable as income in 1930 and hence not returnable as taxable income for that year.

*Decision will be entered under Rule 50.*